Good morning, Your Honors. May it please the Court, I am Chris Opelinski, counsel for the President of Allied Erecting and his son, Mr. John Raymond and Mr. Michael Raymond. Allied had valuable trade secret rights that were misappropriated in this case. That was the jury's determination. The District Court's determination is that Allied is not entitled to any relief for post-judgment acts of misappropriation by Genesis. That cannot be the law. The central issue vis-à-vis Genesis is whether post-judgment acts of misappropriation should be considered part of a single claim, and hence Allied's claim for post-judgment acts should be barred. We believe that should not be the law. We believe... It should be what the law says though, right? Your Honor, we don't believe the law has addressed this specific issue. I understand, but the law is that it's a single claim. It is, Your Honor. There's two big categories, either it's continuing claim analysis or single claim. Congress says it's a single claim, right, or the legislature. It does, Your Honor, and we believe that this specific circumstance has not been specifically addressed, and we believe that it may entail a determination of the meaning of the word claim, which we believe claim ends at final judgment. In essence, we believe... There's no real reason why the word claim has to end at final judgment unless there's someone else suggesting that. Well, Your Honor, we believe because it happens all the time that you have, for instance, tort claims where there's ongoing damage and you just get the money now. You may get money for future harm, but you can't just reopen it when the future harm is greater than what you sued for, right, because it's just one tort. I mean, there's lots of places in the law where that's the case, is what I'm saying. It's not an anomaly that you have to get all your damages when you sue because it's just one claim. Your Honor, we don't believe that's the case here because it involves, I think, a fundamental assumption that's impractical here, and that's that Allied could have asserted all of its claims in the underlying action for future damages. No, that happens all the time. You either get an injunction or you get a prediction of future damages, and that's all you get. It happens in tort cases all the time, right, where you sue for an injury and then you get, you know, future, you know, all the future damages, and then you could die the next day, you still get all that money, or you could suffer ten times as much injury and not get all that money. Or you get, I mean, you get the value of what was appropriated. But in this case, first off, we didn't get that value. We received damages for a fixed period. Vis-a-vis your question, Judge Roger, we... To follow on her question, you could... Was the... If you didn't get what you deserved, you did appeal, and this Court reinstated it. But we did get what we want, and we're not trying for a do-over of that. What was presented was a fixed claim, which was all of the damages for the 06-09 time period. The jury awarded that. It was 23% to $14 million. There was no evidence, as Genesis contends, that we offered evidence that our trade secret should be purchased, that they purchased a perpetual license. That was not addressed in the first case. It was a fixed time period. Part of the jury instruction? It was part of the jury... Is how much it's worth? That was one of the possibilities under the standard jury instruction. But Allied didn't offer any evidence of that. Genesis didn't offer any evidence of that. Could have? We could have, Your Honor, but we did not. But if it's a single claim, it seems like that was your chance. Well, but Your Honor, that involves the assumption that, number one, we should have properly assumed that Genesis was going to continue to disregard a jury's verdict. Number two, that the court would not award injunctive relief if we prevailed. But number three, that we somehow could have speculated into the future. Unlike the situation that Your Honor posed of an injury and there being future damages, here in a misappropriation, how were we to assume that, A, they would continue to misappropriate, B, how many units would be misappropriated, C, how many years would they continue to misappropriate? None of that could have been presented. In Genesis, we believe... That happens, for instance, in a conversion claim where property is converted and instead of getting the harm that was caused, the tangible property that was converted, you sue in conversion and you get the value of the property. Then if they continue to use the property, they've in effect bought the item. But Your Honor, under a conversion... I don't see why this, if the statute says this is a single claim kind of cause of action, misappropriation sounds sort of like conversion. It sounds like they took it, now they've got it, they need to pay for it, they need to pay what it's worth, or they need an injunction to keep it from being used, they need to get whatever it is because you get one shot because there's just one claim. We don't believe so, Your Honor. In a personal injury or a conversion case, the injury happens and you're paying for the damages arising from that injury. In a conversion, the property is taken and you're paying for the value of that property. In this case, in a misappropriation, you had a number of misappropriations from 06 to 09, and then Genesis is saying we should have assumed they would continue to misappropriate from 2010 into the future. How are we to know, A, whether they would do that? How are we to know whether or not the number of units, would it be one unit, would it be 500? What's the period? There's answers to that, though. One, you can stop it by getting an injunction if you can get it. Two, you can get some kind of effective license, like in the case, the Tressy case or Treffy case or whatever it is, where you get- Tressa case, yes, Your Honor. That was amalgamated versus Tressa? Tressa, okay. In the Tressa case, you could say we get one and a half percent of all future profits for this kind of activity. There's ways it could have been done, right? You're not saying that couldn't have been done. Your Honor, conceptually, in cases, future damages can be predicted. Here, I don't believe it could have been done. Sure, we could have said- It couldn't be done. Then that's a grounds for getting an injunction. We move for an injunction, Your Honor. We move- We lost and should have appealed maybe, and maybe it was wrong, but that doesn't mean it wasn't properly dealt with in the original case. Well, Your Honor, number one, we did appeal that injunction ruling. Quite frankly, we believe it was improper because, ironically, the same judge that denied the injunction on the basis that we were fully compensated by the jury's award took away that award. So, number one, we believe it's wrong, but- We don't have to say whether it was right or wrong or not, we, the current court, because that case stood. I mean, lots of times we're bound by wrong decisions of our court. We can't help it. You're correct, Your Honor. You don't have to decide whether that was right or wrong, the denial of the- Let's assume it was right, then. Well, regardless, it's a different issue. We did move for prospective relief to be out of the very situation we find ourselves in. That was denied, and right or wrong, the denial of an injunction is not the denial of a right to a subsequent claim for damages. Different issues- It's consistent with the idea that it's a single claim, though. Excuse me, Your Honor? The fact that it was litigated before is consistent with the idea that it's a single claim. You either get it or you don't. You can't try and get it again when you didn't get it before. Yes, Your Honor, although we didn't claim it prior to this, and we believe it's impractical to- You didn't seek protection. You didn't seek relief with respect to this harm that you're now seeking relief for. Yes, Your Honor, but that was prospective relief. It was extraordinary relief. It was subject to a clear and convincing standard of proof. What we're now seeking is actual compensatory damages subject to a different standard. And so regardless of that court's ruling, that does- perhaps we were denied, and perhaps properly denied, prospective relief, and junctive relief. That doesn't mean allies should be denied a right to a claim for damages. Is there a new product that has come out that you're suing on? No, Your Honor. We believe that the LXP is the infringing product of our MT. We do believe that additional sizes have been misappropriated, that they have expanded that dealer network into other regions, that we believe there have been additional unauthorized disclosures, i.e., they are now advertising our shrink fit and disclosing it to the world. So those are new thefts? Those are new thefts, Your Honor. And we believe under this court's amalgamated decision, those are new claims that are not barred by the 1333-66-1 Act. In that regard, Your Honor, we are not disregarding Ohio law. We are requesting the court to fashion a rule for a circumstance not contemplated, that a final judgment ends the single claim. That concludes that claim. All acts of misappropriation, in this case, for instance, from the time of filing up to trial, had to be in this one claim. We couldn't split that cause of action. But once a final judgment is issued, that commences the time period for a new claim. Post-judgment acts should constitute a new claim. That would not be the case, you agree, for something like a tort suit for physical injury? Correct. It would not be the case in a conversion suit? Correct. So somehow this is different from that? Correct. What exactly is the difference? Well, in those cases, there's a single injury you're just quantifying. It's they took this property, I secured this injury. Where are my lost profits going to the future? In a conversion, that's not the case. If you convert somebody's horse, then they can ride it. And if they ride it again, they can ride it to death. Because they've converted it. They've paid for it. It's theirs. They've paid for it. They've paid the value of the horse at that time. If they've sued in trespass, they've just would have got how much the horse was injured. But they converted it, so they've bought a horse. You can't sue them for riding the horse that they bought. No, Your Honor. But if the remedy is that you pay for the horse you've stolen, then that has been reimbursed. Here- It was part of the instructions. You said it was part of the instructions. Which claim did you prevail on? We prevailed on the unjust enrichment claim, Your Honor. And as compensation for that, the jury, what was the jury instructed? Was the proper compensation for that? Consistent with the standard charge, they were instructed that there were a variety of measures they could use. It could be what a prudent investor could have offered. It could have been the savings in time and production and various other measures. Sure, those were in the standard charge, but there was absolutely no evidence offered as to the purchase of this trade secret, as to a perpetual license. The only evidence we offered, the only evidence we argued was the proof of unjust enrichment is that they sold $14 million of these offending units from 2006 to 2009, and their own documents showed a 23 percent profit margin. That was their unjust enrichment. At no point did we argue damages going into the future, nor could we, because in a very detailed analysis, there was an analysis of the specific number of units that were misappropriated that we discovered in discovery. We had no idea and could not have speculated as to the number of units that would have been misappropriated in the future. Had we done this, and as Genesys recognizes, which we believe they're speaking out of both sides of our mouth, they say we should have presented this in the first claim, but that claim would have been subject to the standard rule that damages can't be unduly speculative. And if we would have tried... The measure of damages that you presented consisted of the sales that they had of the product, and then a profit margin. Correct. They had four... And is that what the jury awarded you? We believe so, Your Honor. There was no specific interrogatory to the jury. That was the evidence we presented, and the determination by the jury was almost dead nuts with that amount. Twenty-three percent of $14 million they awarded approximately $3 million, which was the only evidence we presented. Okay. And then when you asked for injunctive relief, the court said, well, there's no reason to believe that the amount that you were given didn't include value of it? I think the court said two things, Your Honor. Number one, that they don't believe there was irreparable harm, even though, ironically, they recognize the well-settled rule that constitutes irreparable harm. And then two, they claimed we were fully compensated by the past losses. Then, in that same breath, they took away those past losses from us. So we were left with no compensation and no injunction. But regardless of how they would have ruled, entitled to an injunction, we wouldn't be here. But not entitled to an injunction, as they ruled, that's prospective relief. That's clear and convincing evidence, exceptional circumstances. That's a different burden of proof, a different claim, and a different issue than damages, compensatory damages, as they occur. We don't believe that ruling serves as a bar to the current claim. Okay. Are there any cases that deal with what relief you have to pursue in this type of case? I do not have to join in that suit your claim for the value of what was misappropriated. To state this differently, that as a plaintiff, you have a choice. You could go in and seek the unjust enrichment based on their profits. You can go in and show proof of what a prudent buyer would have paid for the secret. You can approach it another way. But basically, you make your choice, and whatever your choice is, that's the end of it. Your Honor, we believe there are at least two decisions that have recognized this line in the sand of the propriety of coming back in a second suit and claiming for post-judgment acts of misappropriation, and there was no contention that these should have been claimed in the first case. That's this circuit's Sixth Circuit decision in Amalgamated, and the Third Circuit's decision in Electro-Miniatures. Is one of those the Tressy case? Yes, the Amalgamated v. Tressy. In that case, there was an alleged failure to pay the percentage that they agreed to pay. Is that right or wrong? I think that's wrong, Your Honor. In the underlying decision, there was a royalty that was issued, 1.68 percent, but that was not on the subsequently offending products. And so when the claimant came back in for suit two, it did seek relief. The court did hold that it was time barred, but it equitably told. At no point, as Genesis contends, did it allow that suit because of the prior prospective relief being granted. That wasn't the grovelment of the court's decision, and in fact, it wasn't granted on these products that they claimed in the second suit. Your time is up. Yes, thank you. Do you have a question? No. Good morning, may it please the Court. Eric Magnuson on behalf of Genesis and IES. At page ID 176 of the record, you'll find the jury instruction on unjust enrichment. Unjust enrichment means the value to the defendants of the trade secrets resulting from the misappropriation. To determine this value, you may consider the value to the defendant of the secret at the time of the misappropriation, such as what a reasonably prudent investor would have paid for the trade secret. But they didn't introduce that. Well, that was the issue in the first appeal, if I might, Your Honor, because the trial judge said you didn't present any evidence to support the unjust enrichment award. And this court said no, there was enough under that instruction to justify the $3 million. Right or wrong, there is an adjudication by this court that they got the unjust enrichment award based on that jury instruction that it was proper. And so my colleague's argument that somehow they were handcuffed and could not ever prove their future case is simply wrong. If you look at the Ohio statute, 133362 provides for injunction. 133363 talks about damage as recoverable. And as the court has pointed out, when you go to trial, you get to prove your past losses. And here they were seeking lost profits and couldn't prove it. In addition to that, you can protect yourself in the future by getting a royalty or an injunction. Now what the trial court said, this is their fourth bite of the apple, members of the court. In the first case, they sought the damages for basically the taking of their trade secret. That is a property right. It is a breach of a confidential relationship and it's valued. Now whether they had enough evidence or it was just kind of the right evidence, it's over. It was decided. They got the value of the asset. Then they went back into court and said... But they say they didn't get the value of the asset. They say that they got... They got unjust enrichment damages, Your Honor. They got damages. You were required to disgorge your unjustified profit earned during that period of time. It's not the unjustified profit, Your Honor. It is the, as the instruction said, it's the value that we received because of the misappropriation. It's not our profits. That's the evidence they used to justify their claim. But conceptually, what the misappropriation claim, the unjust enrichment claim awards is the cost, the value to us of having taken those secrets. Now that we've taken them, we've paid the value. And what the district court did in the first case, which this court affirmed, is said, well, wait a minute. After you have you some forward going additional damages, or to give you the royalty, or to give you an injunction. And this court affirmed that. Then they went back to the district court after the appeal and they said, well, okay, we couldn't prove our profits. We got the unjust enrichment damages. You denied the injunction and you denied the royalty, all of which is how the Uniform Trade Secret Act deals with these future losses. And they said, but we want supplemental relief. We want you to reopen the case, which is, as the court has pointed out, what happened in Amalgamated, the Tressa case. You know, it's interesting. If their theory is right, there is never an end to trade secret litigation. And that is not the structure that the Ohio legislature has chosen under the Uniform Act. Would it have been conceptually cleaner for you to make a claim preclusion case than to make a statute of limitations? We did, Your Honor. And the district court ruled only on the statute of limitations. We presented them both. Is it cleaner for us to think about it that way than to think about it in terms of... You know, it's six of one, half dozen of the other, Your Honor, because the problem is under the Trade Secret Act, there is a point in time when the statute of limitations begins to run. And the legislature is clear. The Cadence case, for example, from California, in your cases, say, when you've got a Uniform Act, you look at other cases. And in Amalgamated, you looked at Cadence and said, this is a very thoughtful decision. It lays out this whole concept. And one thing it says is, one claim is one claim. And it is not just one claim for statute of limitations purposes, although that language appears in the statute of limitations. Cadence says it's one claim for all purposes, for any litigation purpose. So that's collateral estoppel. And if you accept their argument, you will basically be eviscerating the statute, which sets out this structure. It says, when you know you've had your trade secret taken, the clock starts to tick. And you can seek damages for that. And if damages aren't going to be adequate, you can seek an injunction or a royalty. There are two statutory provisions, 62 and 63, that say that. They tried their damages claim. They got the value of the secret. They then went back to the district court after they got that jury award, which might have been different if the jury had also been told. Now, in addition, they're asking for an injunction, and they're asking for a royalty. The jury may have found the value different. But that was never presented. And that's not our problem, that's theirs. I'm sorry, does the jury decide the injunction issue? No, the jury doesn't. But the damages award may have been different if it was, in fact, going to be limited or subject to the supplemental relief of an injunction. My point, Your Honor, is this. The statute. It's all speculative, really. I mean, but your point is, the underlying point is that all had to be resolved the first time around. Right. And they tried to do it, and this court affirmed the denial. And what about the royalty issue? They asked for a royalty in their supplemental relief, too. And that was denied. OK, but does that, does the royalty issue ever go to the jury? I don't believe that it does, Your Honor. OK. Again, that's an equitable ruling. My overarching point is, there is a remedy for the harm that they claim they can never be protected against. They say, if you let this happen, then when they continue to make our product in the future, we'll have no recourse. Absolutely wrong. They have recourse. In the structure of the Uniform Act, you get damages. And if damages aren't enough, which is what they claim, you get injunctive relief and royalty. Now, it is, I mean, I understand your argument. It's kind of an unsympathetic argument, though, because it means if you win, that you can just go ahead and use this willy-nilly. Well, Your Honor, we paid $3 million for the privilege of using it. And I wouldn't say it's willy-nilly. I mean, our claim was, that is, it That is the answer, though, is that now you can go ahead and do whatever you want with it. Well, the answer is that we've paid to purchase the trade secrets. But you paid back what you had earned during that period. That was the evidence they chose to put in to value it. We said that's not good enough. They said, oh, yes, it is. And they convinced this court on appeal to reverse the district court, who set it aside. Well, if they get the benefit of that argument, if they get to say the proof may not line up exactly, but it's good enough, then they certainly cannot come into court later and say, well, it wasn't really good enough. It really was something else. So you're saying that the measure that they presented was not a legitimate damage strategy? It was legitimate because this court said that it was. This court said it's good enough under the, you read the jury instruction. And while the argument was it doesn't fit in there, that was our argument. They said, well, yes, it does. It is an adequate evidentiary basis for the elements of unjust enrichment. And this court said, yes, it was. If you give them that, which you did in the last opinion, then they cannot turn around and say, well, that wasn't really what we were recovering. Because they cashed the check. They satisfied the judgment. And now what they want to do is go beyond that. And the case law simply does not allow that. You'd be making the same argument even if you'd won the last appeal. It would be harder, Your Honor. It wouldn't be less correct. It would simply be more sympathetic. So you're saying there is no way to recover for a new infringement? Well, infringement isn't quite the term, Your Honor. It is use of this trade secret. And yes, there is a way. The Trade Secret Act says under 1333.63 and 62, you can get a royalty. If you think they're going to continue the misconduct or the use of the misappropriated trade secret, you can ask for that relief, which is what happened in Tresa. If they misappropriated something else, you can then sue on the something else. Yes, and I want to make this point absolutely clear. There is no claim whatsoever that there have been any other secrets that have been taken. This claim against IES, all IES did was buy Genesis. There's no claim IES... So no new secrets? There's no new secrets. Let me just go down that path. So the royalty request comes at the end of the initial trial? Well, in this case, it did. Well, when is it supposed to come? I, you know, Your Honor, it would depend on the facts and circumstances of the case. But when I go to trial, I have to present all of my claims. It is black letter law that I can't hold some claims back and say, well, I'll bring that in the next lawsuit. But I understand what you're saying, that the royalty request has to come in the first lawsuit. It does, Your Honor. OK. So now, let's say you have a situation where the jury's ruled in the plaintiff's favor. It's after trial. The plaintiff goes to the court and says, Judge, we'd either like an injunction because... We're afraid they're going to keep doing it. That's right. Or a royalty. Exactly. And the court says to the others, are you going to keep doing this? And they say no. And the court says, OK, there's no proof that you need this. Well, that is different than this case. In this case, right up till the court asked the other side, are you going to keep doing it, and they say no, you've now described precisely what this case is. Because they got the verdict, then they went back to the trial judge and said, oh, now, in addition, we want royalty and injunction. I know, but I'm asking you, so the judge says no. They say they're not going to do it anymore. I think that this injury is over. And then they violate them. And then they violate it. And let's say that, yeah. That would be a ground for reopening the decision in the first case. Now, I want to make this point very clear. In Tressa, Amalgamated Industries versus Tressa, there was hair color. And there was a judgment that said they get a reasonable royalty on the misappropriated products. Later on, they found out that the defendant was making some different products. And the claim was, they're subject to the royalty of the first lawsuit. And somehow, the plaintiff decided they would bring a second lawsuit. And this court said, it would only have been appropriate to reopen the first lawsuit to decide how the judgment in that case impacts this future conduct. And in fact, that's what the trial judge did in the case. He reopened it. They put a new caption on it. They consolidated the two cases and put a new caption on it. But if you read Tressa carefully, you'll see that this court goes out of its way to say, if this were just a brand new lawsuit, which this is, it would be barred by the statute of limitations. But it's not. It is the first lawsuit reopened. Here, there was a request in 2013, June 24, 2013. There's an order denying the request to reopen. That's where they say they were misled by the judge. The judge said, go bring a new lawsuit if you've got new violations. The fact of the matter, however, is they never appealed the denial of reopening. But isn't that sort of a discretionary matter with the judge, whether to reopen the dead case or say, all right, I mean, I hear you. You have a claim. Go start a new lawsuit. I don't want to reopen this case. Your Honor, in Tressa, Amalgamated, this court said it was error to reopen or to start a new case, to not reopen. You had to continue with the reopened case. And so if they've read that case, they would have known that this court had laid down the path for them. Member of the court, I've got 11 seconds left. Let me simply say this. They've been in court four times, three times they have not gotten the very relief they're asking for here. Statutes of limitations have important policy considerations for them to seal claims, but also end litigation. If you grant them the relief they're asking, you are saying to trade secret plaintiffs, you can continue your claim forever, notwithstanding the clear language of the statute. The district court was correct and should be approved. Thank you very much. In Amalgamated v. Tressa, the court held that the holding now proposed by Genesis would result in an illogical and inconsistent result where new acts of misappropriation would be barred and the plaintiff who had been diligent would not have relief. That court said this cannot be the right result. We respectfully contend that applies here. Genesis contends that Allied was fully compensated in the first case because then it's not unfair to dismiss this second case. But an instruction is not proof. Sure, the court instructed the jury on that standard jury charge for unjust enrichment. It said, you may consider this, but what the decision needs to be based on is evidence. There was no evidence of a license, a perpetual license to go into the future or a lump sum payment. There were a specific- You could have presented that evidence, though. Your Honor, respectfully, yes, we could, but the plaintiff was not required to. We're not required to grant them a perpetual license on our tool. And moreover, we did do that in the post-judgment proceedings. We requested prospective relief in terms of stop them or give us a perpetual royalty, and the court denied it. Now- Did you ever appeal the denial of the royalty? Yes, we did, Your Honor. Yes, we did. We appealed it to this court and the court reversed and reinstated the judgment, but it reaffirmed on all other bases. The bottom line, Your Honor, is that when Genesis says this claim will never end, it will, and it would have, had they honored the jury's verdict and stopped misappropriating. If there's a wrong, there must be a remedy. And their claim of one claim, one bite, means we should have guessed, for instance, in this case, that two years after the award, that IES, a company we didn't know, would come in and acquire Genesis, knowingly acquire these trade secrets, and then continue now to manufacture our LXP. In effect- What if this suit goes, what if we agree with you and it goes back and you get compensated for the use of the misappropriated secrets for the period up to when you brought the lawsuit? And let's say you get that, or it isn't appealed. Then they continue to use it. Can you go sue again? Yes, Your Honor, because what- And then after you get those three years, and that's over, and it's not appealed, can you then sue again after that? Yes, but- But how can you say it's not providing  It is. Well, it is if Allied presents a claim, and it prevails, and it's given the prospective relief. If the court doesn't grant us the prospective relief, then the court is saying you must come back in and prove your actual damages if they continue to misappropriate. Allied doesn't want to be in this situation. They were put in this situation because the court, despite the misappropriation of a trade secret, said, we're going to make you come back. Now, there's a reason that this exceptional relief is subject to a higher standard, and that's, you're guessing, into the future. Should we grant you this prospective relief? It is subject to the standard of irreparable harm, exceptional circumstances. It wasn't granted, but all of the cases recognize that if a court chooses, in its discretion, to not issue an injunction or prospective relief, that's not a bar to the plaintiff coming back in for additional relief if the defendant continues to misappropriate. Okay, so where are those cases that say you can win, and then if your royalties are, if your royalty request is denied, you can come back in and get, make a claim for past damages as opposed to future damages? Your Honor, we believe in the miniatures case, if I'm citing it correctly, that they were permitted to come back in a second claim, I believe, but we're relying, Your Honor, on more, I could be mistaken there, we're relying on the more general proposition that the denial of an injunction doesn't constitute the denial of a claim for future damages, and in some, if I may conclude, we believe in a situation here where Allied has been diligent in every step in the process, and it's been held that its trade secrets have been violated, should Genesis be permitted, and in fact given immunity to continue to misappropriate their product. That would be an inequitable result here, and we believe either in terms of fashioning the law that the claim stops at final judgment or vis-a-vis the doctrine of equitable tolling is set forth and amalgamated, you shouldn't put a plaintiff at a court on the basis of a statute of limitation when it has been diligent in every step in the process. Fair enough. Thank you. Case will be submitted. I believe the other cases are on the briefs, is that correct? Then you may go ahead and dismiss the court.